UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN JOHNSON,

               Plaintiff,

v.

UNKNOWN FLAQUEL et al.,

               Defendants.

_____/

Case No. 1:22-cv-784

Hon. Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In an order (ECF No. 5) entered on August 29, 2022, the Court granted Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Inspector Miller and Unknown Officers. The Court will also dismiss Plaintiff's claims against Defendant Flaquel in his official capacity on grounds of immunity and for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County. Plaintiff sues Officer Unknown Flaquel, Inspector Miller, and "Uknown [sic] Officer(s) Defendants" in their individual and official capacities. (ECF No. 1, PageID.1, 2.)

Plaintiff claims that, on May 18, 2021, following a verbal exchange with Defendant Flaquel in which Defendant Flaquel "made explicit and deragatory [sic] remarks," Defendant Flaquel called Plaintiff into a cell. (*Id.*, PageID.2.) Plaintiff followed Defendant Flaquel into the cell, at which time Defendant Flaquel told the other inmates to "get the f*** out." (*Id.*) Defendant Flaquel placed a coat over the cell door window and asked Plaintiff, "what do you want to do?" (*Id.*) Defendant Flaquel then grabbed Plaintiff by the genitals and shoved Plaintiff onto the bunk. (*Id.*) Plaintiff immediately left the cell and reported the assault to the Residential Unit Manager and shift command. (*Id.*)

Plaintiff contends that, within 30 minutes of learning that Plaintiff had reported the incident to shift command and in retaliation for the same, Defendant Flaquel issued Plaintiff a misconduct report, attached to Plaintiff's complaint as Exhibit A. (*Id.*, PageID.3; ECF No. 1-1.)

Plaintiff filed his first grievance related to the May 18, 2021, incident on May 19, 2021, and, after not "observing any progress," filed a second grievance on July 2, 2021. (ECF No. 1; PageID.3; ECF No. 1-2.) Both grievances are attached to Plaintiff's complaint as Exhibit B. (ECF No. 1-2.) It appears that Defendant Miller responded to the first grievance. (*Id.*, PageID.15.) Plaintiff's grievance dated July 2, 2021, alleges that Plaintiff spoke with Defendant Miller

2

following the May 18, 2021, incident—perhaps as part of Miller's preparation of a response to the first grievance—and that Defendant Miller told Plaintiff that Plaintiff was to blame for the incident. (ECF No. 1-2, PageID.17.)

Plaintiff claims that, after Plaintiff filed his second grievance, "other officers began a campaign of harassment against the Plaintiff," including "overly destructive" cell shakedowns and planting a weapon in Plaintiff's cell, which resulted in Plaintiff's transfer to segregation. (ECF No. 1, PageID.3–4.) Upon his release from segregation, Plaintiff reported that his legal papers were missing. He contends that one Defendant Unknown Officer intentionally discarded Plaintiff's legal work in retaliation for Plaintiff's grievance against Defendant Flaquel. (*Id.*, PageID.3.) After inquiring about the whereabouts of his legal papers, Plaintiff was taken to segregation without any explanation or report of misconduct. (*Id.*, PageID.3–4.)

On or about April 10, 2022, Plaintiff asked Defendant Miller about the status of his grievance(s) and reported his missing legal papers. (*Id.*) Plaintiff does not indicate any response by Defendant Miller. Plaintiff was transferred to LRF on April 26, 2022. (*Id.*)

Based upon the foregoing, Plaintiff alleges violations of his Eighth and First Amendment rights. He seeks a declaratory judgment, a permanent injunction against the named Defendants, nominal and punitive damages, and litigation costs. (*Id.*, PageID.4.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff alleges that Defendant Flaquel violated his First and Eighth Amendment rights. He also claims that Defendant Miller and Unknown Defendant Officers violated Plaintiff's First Amendment right to be free from unlawful retaliation.

### A.      Defendant Officer Unknown Flaquel

Plaintiff brings two claims against Defendant Flaquel. First, Plaintiff claims that Defendant Flaquel violated Plaintiff's Eighth Amendment rights when Defendant Flaquel grabbed Plaintiff's

4

genitals and shoved Plaintiff into a bunk on May 18, 2021. (ECF No. 1, PageID.2.) Second, Plaintiff claims that Defendant Flaquel retaliated against Plaintiff in violation of Plaintiff's First Amendment rights when Defendant Flaquel filed a misconduct report against Plaintiff 30 minutes after learning of, and in response to, Plaintiff's complaints regarding the May 18, 2021, incident. (ECF No. 1, PageID.3.) Each claim will be addressed in turn.

### 1.    Eighth Amendment Sexual Assault Claim

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain'" forbidden by the Eighth Amendment. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019). "Disparate power dynamics render particularly disturbing allegations of nonconsensual sexual contact between a prisoner and a corrections officer." *Wade v. Riker*, No. 21-2976, slip op. at p. 3 (6th Cir. Apr. 11, 2022) (citing *Rafferty*, 915 F.3d at 1096). "An allegation—fairly construed—that a correctional

officer intentionally touched a prisoner's genitals without consent, is undoubtedly severe, no matter how 'isolated' or 'brief.'" *Id.* at p. 4.

Plaintiff's allegation that Defendant Flaquel intentionally touched Plaintiff's genitals, on one occasion, appears to be sufficiently serious to state a claim at this early stage of the proceedings.

### 2.    First Amendment Retaliation Claim

Plaintiff alleges that, within 30 minutes of learning that Plaintiff had complained of the May 18, 2021, assault and in response to Plaintiff's complaint, Defendant Flaquel filed a Class I Misconduct Report against Plaintiff, describing a different version of the May 18 events, which Plaintiff appears to contend was false. (ECF No. 1, PageID.3; ECF No. 1-1, PageID.9.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.    Protected Conduct

As to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-

Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (quoting *Pearson*, 471 F.3d at 741) (finding that a conversation constituted protected petitioning activity). The Court, therefore, concludes that Plaintiff engaged in protected activity when he reported the May 18, 2021, assault to Residential Unit Manager McLaughlin and to shift command, and when he filed grievances regarding the assault.

### b.    Adverse Action

Plaintiff alleges that Defendant Flaquel issued Plaintiff a misconduct report for Class I misconduct in retaliation for Plaintiff's complaint regarding the May 18, 2021, assault.[1] To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). When determining whether the issuance of a misconduct ticket rises to the level of an adverse

---

[1] Because Plaintiff's complaint does not include the hearing officer's factual findings, this Court is unable to determine at this stage the preclusive effect of those findings, if any. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013).

action, the Sixth Circuit has instructed courts to look not only at the punishment imposed but also the punishment that could have been imposed. *Maben*, 887 F.3d at 266–67.

Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Id.* (quoting *Hill*, 630 F.3d at 474)) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). This led the *Maben* court to conclude that even the threat of lesser sanctions for a Class II misconduct is sufficient to rise to an adverse action for purposes of a claim for First Amendment retaliation. *Maben*, 887 F.3d at 266. Accordingly, Plaintiff has stated a sufficient adverse action.

### c.      Causation

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Given Plaintiff's allegations that Defendant Flaquel filed the Misconduct Report against Plaintiff only 30 minutes after learning that Plaintiff complained of the May 18, 2021, incident, the temporal proximity here may be "significant enough" to support an inference of retaliatory motive.

Accordingly, the Court concludes that Plaintiff's First Amendment retaliation claim against Flaquel cannot be dismissed upon preliminary review.

### B.      Defendant Inspector Miller

According to Plaintiff's complaint, Defendant Inspector Miller was generally responsible for the investigation and prevention of staff misconduct. (ECF No. 1, PageID.1.) It appears that

8

Defendant Miller responded to Plaintiff's first grievance, but not to Plaintiff's satisfaction. Plaintiff also claims that, on April 10, 2022, he asked Defendant Miller about the status of his grievance(s) and reported his missing legal papers. (*Id.*, PageID.4.) Plaintiff was transferred to a new facility on April 26, 2022. (*Id.*) Based on those allegations, Plaintiff claims that Defendant Miller's "retaliatory actions against Plaintiff's protected conduct violated his right to redress grievances and be free from retaliation." (Compl., ECF No. 1, PageID.4.)

To the extent that Plaintiff's claim against Defendant Miller is based on Miller's response to Plaintiff's first grievance, Plaintiff has failed to state a claim. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Section 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Miller engaged in any active unconstitutional behavior when denying Plaintiff's first grievance.

To the extent Plaintiff's claim against Defendant Miller is instead based on Plaintiff's April 26, 2022, transfer, his allegations do not suffice for several reasons. First, a simple transfer from one prison to another is not adverse action. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see, e.g., Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse

action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." (internal quotation marks omitted)).

Second, Plaintiff does not allege that Defendant Miller played any role whatsoever in effecting Plaintiff's transfer. A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038; *Shehee*, 199 F.3d at 301.

Finally, there are no allegations that support an inference that Defendant Miller's words or actions—adverse or otherwise—were motivated by retaliation for protected conduct. Retaliation is easy to allege but it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Even temporal proximity cannot save Plaintiff's conclusory allegation of a retaliatory motive; the protected conduct—his April 10, 2022, inquiry regarding his grievances—and the adverse action—the transfer—are separated by more than two weeks.

For all of these reasons, nothing in Plaintiff's complaint or the exhibits thereto supports a plausible inference that Defendant Miller violated Plaintiff's First Amendment rights.

## C.    Unknown Officer Defendants

Plaintiff also contends that Unknown Officers violated Plaintiff's First Amendment rights. Plaintiff claims that, following the filing of his second grievance, "other officers began a campaign of harassment against Plaintiff . . . ." (ECF No. 1, PageID.3.) Plaintiff alleges that these Unknown Officers performed "overly destructive" cell shakedowns, planted a weapon in Plaintiff's cell resulting in segregation, discarded Plaintiff's legal work, and temporarily placed him in segregation without explanation. (*Id.*, PageID.3–4.) As discussed above, Plaintiff has the initial burden of pleading facts against the Unknown Officers that would plausibly suggest that the

10

adverse actions described within the complaint were motivated, at least in part, by Plaintiff's protected conduct. *See Thaddeus-X*, 175 F.3d at 394. Plaintiff's allegations of retaliation for the filing of his second grievance fall short.

 "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff merely alleges the ultimate fact of retaliation, which is insufficient to state a claim under § 1983. *See Murphy*, 833 F.2d at 108. He claims that "other officers began a campaign of harassment against Plaintiff" after Plaintiff filed his second grievance, but he alleges no facts from which to reasonably infer that Defendants' actions were motivated by Plaintiff's protected conduct. Plaintiff suggests that because he filed a grievance within days, weeks, or months[2] before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and

---

[2] Plaintiff's complaint does not provide a timeframe for what he describes as "overly destructive" cell shakedowns; however, the alleged planting of the weapon in Plaintiff's cell and the destruction of Plaintiff's legal work occurred more than seven months after Plaintiff filed his July 2, 2021, grievance. (ECF No. 1, PageID.3.)

an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476.

Because Plaintiff's claims of retaliation against Unknown Defendants fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), such claims must be dismissed.

### D.     Defendants in Their Official Capacities

Finally, Plaintiff brings claims against each Defendant in both their individual and official capacities. (ECF No. 1, PageID.2.) He seeks a declaratory judgment, a permanent injunction, and nominal and punitive damages. (*Id.*, PageID.4.) For the reasons set forth below, the Court will dismiss all "official capacity" claims.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against each Defendant employed by the MDOC, (ECF No. 1, PageID.2), are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not

expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54. Therefore, Plaintiff's "official capacity" claims seeking a declaratory and monetary relief are properly dismissed on grounds of immunity.

While a suit against an individual in his official capacity is ordinarily equivalent to a suit brought against the governmental entity, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), an official-capacity action seeking *injunctive relief* constitutes an exception to sovereign immunity, *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). As the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of

federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff's complaint does not allege an ongoing violation of federal law, nor does it seek relief properly characterized as prospective as Plaintiff is no longer incarcerated at the MCF under the care and supervision of the named Defendants. Accordingly, the Court will dismiss Plaintiff's "official capacity" claims in their entirety.

### III.    Motion to Appoint Counsel

Plaintiff has also asked the Court to appoint counsel to represent him. (ECF No. 3.) He asserts that he is indigent, has a diagnosed mental health condition, and requires assistance from other inmates in the preparation of legal documents. (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion will be denied.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Inspector Miller and Unknown Officers

will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42

U.S.C. § 1997e(c). Plaintiff's claims against Defendant Flaquel in his official capacity will also be

dismissed on grounds of immunity and for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2)

and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendant Flaquel in his

personal capacity for violations of the Eighth and First Amendment remain in the case.

An order consistent with this opinion will be entered.


Dated:   <u>October 4, 2022</u>                              <u>/s/ Jane M. Beckering</u>
                                                                    Jane M. Beckering
                                                                    United States District Judge